**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SIGITAS VAZNELIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| HEALTH CARE SERVICE CORPORATION d/b/a | ) | **JURY DEMAND** |
| BLUE CROSS BLUE SHIELD OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Sigitas Vaznelis, by his attorneys, state the following as his complaint against

Defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois ("HCSC").

### INTRODUCTION

1.    Plaintiff Sigitas Vaznelis suffers from advanced amyotrophic lateral sclerosis

("ALS").  He is confined to his home, is ventilator-dependent 24 hours per day, and receives all

of his nutrition and medication through a feeding tube.  Since 2015, Mr. Vaznelis has required

and has been receiving 24 hours, seven days a week, in-home skilled nursing care, paid for by

HCSC, which administers his health insurance policy.

2.    HCSC has recently opposed paying for 24/7 skilled nursing care for Mr. Vaznelis,

claiming that Mr. Vaznelis's care is "custodial" in nature (*i.e.*, primarily for personal comfort or

convenience) and does not require skilled nursing.

3.    Less than six months ago, in December 2017, a decision by HCSC to deny skilled

nursing care was overturned following an Independent External Review, which determined:

that:

> It is imprudent to decrease the quantity of hours the patient has ventilator supervision and nursing care as this reduction may result in the development of pneumonia, or an unnecessary admission into the hospital and possibly even an acceleration of death.

4.      Despite that determination and notwithstanding the further progression of the ALS, on March 2, 2018, HCSC advised Mr. Vaznelis that effective May 1, 2018, HCSC will only cover 84 hours of skilled nursing care per week; and as of July 1, 2018, HCSC will not pay for any skilled nursing care for Mr. Vaznelis.

5.      This case is brought under the Employee Retirement Income Security Act of 1974 ("ERISA") to enforce Plaintiff's rights under the health plan and to enjoin HCSC from terminating coverage for 24/7 in-home skilled nursing care.

## THE PARTIES, JURISDICTION AND VENUE

6.      Plaintiff Sigitas Vaznelis, currently age 59, is an individual residing in the State of Illinois.

7.      Defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois, headquartered in Chicago, Illinois, issues and administers health care plans, including the plan at issue in this action.

8.      This Court has jurisdiction over this action pursuant to ERISA §§ 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)), which allows the district court to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case involves a group health plan sponsored by Morris Engineering for the benefit of its employees, including Plaintiff, and administered by Defendant HCSC for the benefit of the Morris Engineering employees and their dependents.

9.      Jurisdiction in this Court is also proper pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United States.

10.     Venue is proper in this District pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because the health care plan is administered in this District, the breach of the health care plan took place in this District, and Defendant HCSC resides in or may be found in this District.

## FACTUAL BACKGROUND

### Relevant Health Care Plan Provisions

11.     Mr. Vaznelis is an employee of Morris Engineering, which is the sponsor of an "employee welfare benefit plan" under ERISA § 1003, 29 U.S.C. § 1002(1), (the "Plan"). HCSC has served as the insurer and administrator of the Plan. Mr. Vaznelis is a participant of the Plan as a benefit of his employment.

12.     Under the Plan, HCSC has established a "Medical Services Advisory Program (MSA)" to perform a review of certain covered health care services prior to such services being rendered. Those covered services include private duty nursing services.

13.     Coverage of private duty nursing is provided where service is "medically necessary."

14.     The Plan defines "medically necessary" as follows:

> Medically Necessary means that a specific medical, health care or Hospital service is required, in the reasonable medical judgment of Blue Cross and Blue Shield, for the treatment or management of a medical symptom or condition and that the service or care provided is the most efficient and economical service which can safely be provided.

15.     The Plan provides the following additional relevant definitions:

> CUSTODIAL CARE SERVICE … means any service primarily for personal comfort or convenience that provides general maintenance, preventive, and/or protective care without any clinical likelihood of improvement of your condition. Custodial Care Services also means those services which do not require the technical skills, professional training and clinical assessment ability of medical

3

and/or nursing personnel training and clinical assessment ability of medical and/or nursing personnel in order to be safely and effectively performed. These services can be safely provided by trained or capable non-professional personnel, are to assist with routine medical needs (e.g. simple care and dressings, administration of routine medications, etc.) and are to assist with activities of daily living (e.g. bathing, eating, dressing, etc.). Custodial Care Service also means providing care on a continuous Inpatient or Outpatient basis without any clinical improvement by you.

LONG TERM CARE SERVICES…means those social services, personal care services and/or Custodial Care Services needed by you when you have lost some capacity for self-care because of a chronic illness, injury or condition.

MAINTENANCE CARE … means those services administered to you to maintain a level of function at which no demonstrable and/or measurable improvement of condition will occur.

PRIVATE DUTY NURSING SERVICE …means Skilled Nursing Service provided on a one-to-one basis by an actively practicing registered nurse (R.N.) or licensed practical nurse (L.P.N.). Private duty nursing is shift nursing or 8 hours or greater per day and does not include nursing care of less than 8 hours per day. Private Duty Nursing Service does not include Custodial Care Service.

SKILLED NURSING SERVICE … means those services provided by a registered nurse (R.N.) or licensed practical nurse (L.P.N.) which require the clinical skill and professional training of an R.N. or L.P.N. and which cannot reasonably be taught to a person who does not have specialized skill and professional training. Benefits for Skilled Nursing Service will not be provided due to the lack of willing or available non-professional personnel. Skilled Nursing Service does not include Custodial Care Service.

RESPITE CARE SERVICE…means those services provided at home or in a facility to temporarily relieve the family or other caregivers (non-professional personnel) that usually provide or are able to provide such services for you.

16.     The Plan also provides, under "Other Covered Services," that: "Benefits for Private Duty Nursing Service will be provided to you in your home only when the services are of such a nature that they cannot be provided by non-professional personnel and can only be provided by a licenses health care provider."

4

17.     Care which is considered "Custodial" or "Long Term" or "Maintenance" or "Respite" is not a covered benefit under the Plan.

### Sigitas Vaznelis' Health and Medical Needs

18.     Mr. Vaznelis suffers from advanced ALS, a progressive neuromuscular disorder, which is ultimately fatal.  Currently, due to the advanced stage of his illness, he is confined to his home and requires a mechanical ventilator (24 hours per day) and feeding tube.  He is not ambulatory.  He communicates with an eye gaze due to the paralysis of all of his ambulatory and speaking functions due to the illness.

19.     Mr. Vaznelis lives at home with his wife, and their son, who is autistic and non-verbal.

20.     Mr. Vaznelis is completely dependent on others for all of his care.

21.     Since approximately October 2015, HCSC has approved continuous 24/7 in-home skilled nursing services under the terms of the Plan; and has reimbursed the cost of such services.

22.     Mr. Vaznelis' respiratory status is compromised and requires constant monitoring and assessment to maintain his vital signs within normal limits, and be on-site and available to perform life-saving interventions at a moment's notice.  On a daily basis, his skilled nurses provide: tracheal suctioning, cough assist respiratory treatments, medicated nebulizer treatments, repositioning, and manual breath to prevent occluded airway and oxygen desaturation.  If Sigitas Vaznelis experiences occlusion of an airway due to increased secretions or a mucous plug, then he requires immediate intervention without which he may suffocate.

23.     The skilled nurses also administer all of Mr. Vaznelis' nutrition, hydration, and medications through a percutaneous endoscopic gastrostomy ("PEG") tube, and maintain aspiration precautions to prevent aspiration pneumonia.

5

24.     The skilled nurses also monitor Mr. Vaznelis' skin very closely, and perform repositioning multiple times a day to prevent the development of bed sores.

25.     Without constant skilled nursing supervision, Sigitas Vaznelis is at extremely high risk for respiratory complications, preventable infections, and death due to suffocation and/or cardiac arrest.

26.     Mr. Vaznelis' treating physicians have certified to HCSC on repeated occasions that it is medically necessary for Mr. Vaznelis to receive 24/7 skilled nursing care.

**December 2017 External Review Overturns HCSC Decision to Deny 24/7 Skilled Care**

27.     During the approximate three plus years that Mr. Vaznelis has been receiving 24/7 skilled nursing care, his physical and medical condition has continued to decline due to progression of ALS.

28.     The only alternative to Mr. Vaznelis' in-home skilled nursing care would be immediate admission to an intensive care unit at an acute care hospital due to his ventilator dependency.

29.     In September 2017, HCSC advised Mr. Vaznelis that it would be terminating coverage for 24/7 skilled nursing care because "[s]ome of the care needed is considered Custodial, Respite, Long Term and Maintenance Care Services which are benefit exclusions. These services do not require the technical skills, professional training and clinical assessment ability of nursing personnel…"

30.     Mr. Vaznelis appealed HCSC's decision to deny coverage for 24/7 skilled nursing and eventually sought an "Independent External Review" of HCSC's decision through the auspices of the Illinois Department of Insurance pursuant to 215 ILCS 180.

31.     The Illinois Health Carrier External Review Act (the "Act") provides "uniform standards for the establishment and maintenance of external review procedures to assure that covered persons have the opportunity for an independent review of an adverse determination or final adverse determinations." 215 ILCS 180/5, *et seq*.

32.     The Act provides that any decision rendered by the independent external reviewer is binding on the health carrier:

> An external review decision is binding on the health carrier. An external review decision is binding on the covered person except to the extent the covered person has other remedies available under applicable federal or State law.

215 ILCS 180/45.

33.     On December 11, 2017, the External Review concluded that 24/7 skilled nursing coverage should be provided to Mr. Vaznelis due to the nature of the services he required, and stated the following as its rationale:

> Title 77, Section 245.40 of the Illinois Administrative Code states that a 'home service worker shall not provide respiratory care. Respiratory care is skilled and includes postural drainage; cupping; adjusting oxygen flow with established parameters; nasal, endotracheal and tracheal suctioning; and turning off or changing tanks…' It is imprudent to decrease the quantity of hours the patient has ventilator supervision and nursing care as this reduction may result in the development of pneumonia, or an unnecessary admission into the hospital and possibly even an acceleration of death. The patient has a complex neurodegenerative condition for which skilled care is appropriate per [the Centers for Medicare and Medicaid]. The use of RNs (registered nurse) and LPNs (licensed practical nurse) for monitoring a ventilator is supported per the Illinois Administrative Code and this is the standard of care as RNs and LPNs are trained to monitor for sudden changes in condition and are able to adjust the ventilator when necessary.

34.     Pursuant to the December 2017 External Review decision, HCSC was required to continue to maintain coverage for 24/7 in-home skilled nursing care for Mr. Vaznelis.

35.     Over the next few months, HCSC continued to provide coverage for 24/7 skilled care; however, in February 2018, Mr. Vaznelis was required to request reauthorization of 24/7 in-home skilled nursing care.

**HCSC Denies Request for Reauthorization of 24/7 Skilled Care**

36.     Between January and February 2018, Mr. Vaznelis submitted to HCSC the necessary documentation for reauthorization of 24/7 skilled nursing care establishing the ongoing medical necessity for such treatment.

37.     On March 2, 2018, HCSC advised Mr. Vaznelis that effective May 1, 2018, HCSC will cover only 84 hours of skilled nursing care per week, which, after July 1, 2018, would be altogether eliminated.

38.     In its March 2, 2018 denial letter, HCSC stated that the reason for its decision was because "the member is receiving care that can be provided by a trained caregiver and would be considered to be custodial care. The decision, HCSC stated, was "based upon the clinical information submitted."

39.     Mr. Vaznelis appealed the March 2, 2018 decision to HCSC pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1; however, on May 7, 2018, Plaintiff learned that HCSC had upheld their decision to reduce the number of hours covered (to 12 hours per day) as of May 10, 2018, and ultimately, to terminate coverage for skilled nursing care as of July 1, 2018. In its decision on appeal, HCSC provided the same rationale for denying 24/7 skilled care—that the health care services Mr. Vaznelis requires "are considered custodial in nature, as the patient has not and is not expected to show improvement. The services that the patient requires can be performed by nonprofessional personnel with equal safety and efficiency."

40.     Contrary to the reasons provided by HCSC, as with the prior determination, the health care that Mr. Vaznelis has required and will necessarily require as his condition progresses is not "custodial" in nature and cannot, as previously determined following Independent External Review, be provided by anyone other than a skilled nurse.  Due to HCSC's refusal to provide 24/7 skilled nursing coverage, and the threat of imminent harm once the 24/7 skilled nursing care is reduced, Mr. Vaznelis has no alternative but to seek to enforce his rights under the terms of the Plan, clarify his rights to future benefits, and to enjoin HCSC from reducing skilled nursing services below 24 hours per day, 7 days a week.

41.     All required pre-litigation appeals seeking the coverage of health benefits for Plaintiff have now been exhausted pursuant to 29 U.S.C. § 1133.  Therefore, this matter is ripe for judicial review.

**COUNT I-**
**CLAIM FOR BENEFITS, ENFORCEMENT OF RIGHTS**
**AND CLARIFICATIONS OF FUTURE BENEFITS RIGHTS**
**UNDER ERISA § 502(a)(1)(B)**

42.     Plaintiff reasserts and realleges the allegations of paragraphs 1 through 41 as if fully set forth herein.

43.     Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Mr. Vaznelis is entitled to: (1) enforce his rights under the terms of the Plan, (2) clarify his rights to future benefits under the terms of the Plan, and (3) recover benefits due under the Plan that were wrongfully withheld.

44.     As administrator of the Plan, HCSC makes all claims determinations and decides all benefit questions under the Plan.

45.     HCSC has an obligation pursuant to the terms of the Plan to pay the benefits described in the Plan.

46.     HCSC has refused to approve coverage for skilled nursing care for 24 hours a day, 7 days a week for Mr. Vaznelis on the basis that he "has not shown improvement in his condition and is not expected to show improvement" so his care at this point is considered "custodial," and therefore, the requested service is not supported as medically necessary.

47.     HCSC's decision to refuse to approve coverage for 24/7 skilled nursing care for Mr. Vaznelis on this basis is improper since no such criteria exists in the plan and the discontinuance of coverage places the Plaintiff at risk of sudden death if he cannot be timely transported to a hospital .

48.     Mr. Vaznelis' treating physicians have concluded and reported to HCSC on multiple occasions that it is medically necessary for Mr. Vaznelis to receive 24/7 skilled nursing care.

49.     Mr. Vaznelis seeks an order directing HCSC to immediately authorize coverage for 24/7 skilled nursing care for Mr. Vaznelis that shall continue until such time as Mr. Vaznelis' skilled nursing care is no longer medically necessary for his care and treatment under the criteria set forth by the prior independent external review.

WHEREFORE, Plaintiff Sigitas Vaznelis seeks entry of an order directing Defendant Health Care Services Corporation to maintain 24/7 in-home skilled nursing care (168 hours per week) for Plaintiff until such time as 24/7 in-home skilled nursing care is no longer necessary, and for such further relief as this Court deems just and proper.

## COUNT II-
## CLAIM TO ENFORCE TERMS OF THE PLAN AND FOR A DECLARATORY JUDGMENT UNDER ERISA § 502(a)(3)

50.     Plaintiff reasserts and realleges the allegations of paragraphs 1 through 41 as if fully set forth herein.

51.     Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), allows a participant or beneficiary to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or to "obtain other equitable relief," including a declaratory judgment.

52.     Mr. Vaznelis, as a participant of the Plan, seeks to enjoin HCSC from terminating coverage for his 24/7 in-home skilled nursing care on the basis that the care he requires is "custodial" in nature or due to the mistaken claim that lay personnel can provide substitute skilled nursing care.

53.     Mr. Vaznelis has reason to believe that HCSC has "flagged" his claim for review by the Private Duty Nursing ("PDN") Committee every four to six months; and that the PDN Committee is engaged in a pattern or practice of systematically denying claims involving ALS patients and other patients dependent on mechanical ventilators and other equipment to survive, who require skilled nursing care but for whom no medical improvement is expected, in a warped misinterpretation of the plan documents that is contrary to the plain language of the plan and motivated by HCSC's financial conflict of interest as both the evaluator and payor of claims. *See generally Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008).

54.     Mr. Vaznelis has reason to believe that HCSC's medical director and/or agents have flagged Mr. Vaznelis's claim for review every four to six months based on the erroneous assumption that individuals with ALS who lose the ability to communicate with the outside world are in a "vegetative state" and, thus, ineligible for ongoing PDN services.

55.     Mr. Vaznelis seeks to obtain other equitable relief, including injunctive relief and a declaratory judgment as to the terms of the Plan, to redress HCSC's violations of the Plan and to enforce provisions of the terms of the Plan, to ensure that Mr. Vaznelis continues to receive medically necessary 24/7 in-home skilled nursing care until a decision in this case is reached on

the merits; and that coverage after the conclusion of this lawsuit for so long as Mr. Vaznelis continues to meet eligibility criteria, as determined by this Court.

56.     HCSC is a fiduciary of the Plan because itftfully administers the Plan, is identified in the Plan as the claims administrator, and exercises authority in the administration of the Plan. 29 U.S.C. Sec. 1002(21)(A).

57.     As an ERISA fiduciary, HCSC is obligated to administer the Plan "solely in the interest of the participants and beneficiaries and…in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provision of" ERISA.  29 U.S.C. Sec. 1104(a)(1)(C).

58.     HCSC violated its fiduciary duties by refusing to authorize continued coverage for 24/7 in-home skilled care for Mr. Vaznelis that is inconsistent with ERISA.

59.     Plaintiff seeks an emergency injunction, as well as a preliminary and permanent injunction, enjoining HCSC from reducing and ultimately eliminating coverage for in-home skilled nursing care for Plaintiff below 24 hours per day, 7 days a week, so long as Plaintiff's condition remains the same, and a declaratory judgment as to the meaning of the terms of the Plan.

## COUNT III -
## CLAIM FOR DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201

61.     Plaintiff reasserts and realleges the allegations of paragraphs 1 through 41 as if fully set forth herein.

62.     In order to resolve this controversy, Plaintiff requests that, in the alternative, this Court declare the respective rights and duties of the parties in this matter and, in particular, that the Court declare that Mr. Vaznelis is entitled to 24/7 private duty nursing services under the Plan for so long as he continues to meet the eligibility criteria, as determined by the Court.

63.     A valid case and controversy exists sufficient for this Court to declare the rights and remedies of the parties, irrespective of whether Mr. Vaznelis's PDN services are reinstated following external review, because Plaintiff has reason to believe HCSC has "flagged" his claim for review by the PDN Committee and, hence, termination every four to six months, regardless of the opinions of Plaintiff's treating physicians and external reviewing doctors for the State of Illinois that the requested nursing services are medically necessary, skilled in nature, cannot reasonably be taught to family members, and otherwise satisfy the Plan's eligibility criteria.

64.     Plaintiff has the requisite standing to request this declaration because he is a participant in the Plan and has been injured by HCSC's actions, and will continue to be injured unless the Court intervenes by providing guidance as to the Plan's terms.

65.     The controversy is ripe for determination at this time because the Plan will reduce Mr. Vaznelis's private duty nursing services effective May 10, 2018, and provide no private duty nursing services after July 1, 2018.  Furthermore, as explained above, even if benefits are reinstated following external review, Plaintiff has no protection against further unlawful interference by HCSC with his private duty nursing services once the current authorization period expires.

66.     Thus, without Court intervention, HCSC's practice of unlawfully denying benefits every four to six months, thus forcing Plaintiff to resort to external review for reinstatement of benefits, could continue indefinitely until Plaintiff dies, resulting in unnecessary emotional and financial distress to him and his family.

WHEREFORE, Plaintiff Sigitas Vaznelis seeks: (1) entry of a temporary restraining order, as well as a preliminary and permanent injunction, requiring Defendant Health Care Service Corporation to maintain 24/7 in-home skilling nursing care (168 hours per week) for

Plaintiffs until such time as Plaintiff's treating physician determine that 24/7 skilled nursing care is no longer necessary, (2) enjoin Defendant from reducing or terminating coverage for in-home skilled nursing care for Plaintiff because the care is "custodial" in nature, (3) a declaratory judgment as to the meaning of the Plan terms and entry of an order directing Defendant to make a proper review of the claim following the appropriate procedures by being bound by the December 2017 External Review decision, (4) an award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), and for such further relief as this Court deems just and proper.

**SIGITAS VAZNELIS**

By: /s/ *Maureen Browne Schoaf*
Richard R. Winter
Maureen Browne Schoaf
HOLLAND & KNIGHT LLP
131 S. Dearborn St., 30th Fl.
Chicago, IL 60603
312-263-3600
312-578-6666 (fax)
richard.winter@hklaw.com
maureen.schoaf@hklaw.com

and

By: /s/ *Martina B. Sherman*
Martina B. Sherman
Mark D. DeBofsky
DEBOFSKY, SHERMAN & CASCIARI P.C.
200 W. Madison St., Suite 2670
Chicago, IL 60606
312-561-4040
312-929-0309 (fax)
msherman@debofsky.com
mdebofsky@debofsky.com