**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SIGITAS VAZNELIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 cv 03329 |
| | ) | |
| HEALTH CARE SERVICE CORPORATION d/b/a | ) | **JURY DEMAND** |
| BLUE CROSS BLUE SHIELD OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Sigitas Vaznelis ("Mr. Vaznelis") seeks, on an emergency basis, a temporary restraining order enjoining Defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois, ("HCSC"), from terminating his 24 hours, 7 days a week, in-home skilled nursing care, pending a preliminary injunction hearing. Mr. Vaznelis, who suffers from amyotrophic lateral sclerosis ("ALS"), is ventilator-dependent and receives all of his nutrition, hydration, and medication through a feeding tube. Without a skilled nurse to monitor his ventilator and recognize and act to treat any occlusions of his airway, Mr. Vaznelis runs a substantially increased risk of dying as a consequence of the occlusion. Because HCSC has only recently advised Mr. Vaznelis that it will reduce coverage of his 24/7 skilled nursing care to 84 hours per week, as of May 10, 2018,[1] Plaintiff brings this motion on an emergency basis.

---

[1] As of July 1, 2018, HCSC will terminate coverage for 24/7 in-home skilled nursing care for Mr. Vaznelis.

# ARGUMENT

The standard for granting or denying a temporary restraining order is governed by federal procedural law. *See* FED. R. CIV. P. 65; *Gen. Elec. Co. v. Am. Wholesale Co.*, 235 F.2d 606, 608 (7th Cir. 1956). The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *Crue v. Aiken*, 137 F.Supp.2d 1076, 1082-83 (C.D. Ill. 2001). A temporary restraining order is issued to minimize the hardship to the plaintiff until a hearing on a preliminary injunction can be held. *Id.* at 1082 (citing *Faheem–El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).

In order to obtain a preliminary injunction, the plaintiff must show three things: (1) without such relief, he will suffer irreparable harm before his claim is finally resolved; (2) he has no adequate remedy at law; and (3) he has some likelihood of success on the merits. *Harlan v. Scholz*, 866 F.3d 754, 758 (7th Cir. 2017) (citation omitted). "If the plaintiff can do that much, the court must then weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one." *Id.* (citation omitted). The court must also consider whether the injunction is in the public interest. *Id.* Here, Plaintiff can establish that the harm to him is significant, that he has no other adequate relief at law, that he is likely to succeed on the merits, and the balance of equities and the public interest favor granting a temporary restraining order.

## I. Mr. Vaznelis Will Suffer Irreparable Harm Without Entry Of A Temporary Restraining Order And Lacks Another Adequate Remedy.

Without entry of a temporary restraining order maintaining his level of care until a preliminary injunction hearing can be held, Mr. Vaznelis will be irreparably harmed. A plaintiff has no adequate remedy at law when an award of damages at the end of trial will be "seriously deficient as a remedy for the harm suffered." *Roland Machinery Co. v. Dresser Industries, Inc.*,

749 F.2d 380, 386 (7th Cir. 1984) (citations omitted). The requirement of irreparable harm is met when the moving party will suffer harm during the pendency of the case "that cannot be prevented or fully rectified by the final judgment after trial." *Id.*

If an injunction is not issued maintaining 24/7 in-home skilled care for Mr. Vaznelis, he faces an increased risk of catastrophic medical emergency. *See* Declaration of Dr. C. Kelley, attached as **Exhibit A**, ¶ 12; Declaration of D. Miller, attached as **Exhibit B**, ¶ 10. Mr. Vaznelis' wife is not capable of providing the care he needs. *See* Declaration of R. Vaznelis, attached as **Exhibit C**, ¶ 8. An award of money damages cannot compensate Mr. Vaznelis for the harm he will suffer if a medical crisis occurs without a skilled nurse being present to provide assistance. And, assuming he could be treated in an intensive care unit at a hospital, having to leave his home, for a person in his condition, constitutes irreparable harm. *See* Exhibits A and B.

## II.     Mr. Vaznelis Has A Likelihood of Success On The Merits of His Claim.

A plaintiff seeking a temporary restraining order is considered to have a likelihood of success on the merits, if "the plaintiff's chances are better than negligible." *Brunswick Corp. v. Jones, Jr.*, 784 F.2d 271, 275 (7th Cir. 1986) ("Although the plaintiff must demonstrate some probability of success on the merits, 'the threshold is low.' It is enough that 'the plaintiff's chances are better than negligible....'") (citation omitted). Mr. Vaznelis' likelihood of success on the merits is significant.

First, Mr. Vaznelis is likely to succeed on the merits of his claim because HCSC's decision to reduce coverage for Mr. Vaznelis' 24/7 in-home skilled nursing care, and ultimately, terminate it, was arbitrary and capricious. *See generally Militello v. Central States, Southeast and Southwest Areas Pension Fund,* 360 F.3d 681 (7th Cir. 2004) (where benefits plan "confers discretionary authority, then a denial of benefits will be reviewed under an arbitrary and

capricious standard" as oppose to a *de novo* review). Since October 2015, HCSC, which administers the health care plan at issue, has deemed 24/7 in-home skilled nursing care for Mr. Vaznelis "medically necessary," and has provided coverage for these services. Recently, however, HCSC has concluded that 24/7 in-home skilled nursing care for Mr. Vaznelis is not medically necessary because the services that he receives are "custodial in nature, as the patient has not and is not expected to show improvement," and "[t]he services that the patient requires can be performed by nonprofessional personnel with equal safety and efficiency." *See* May 5, 2018 letter from BCBS denying appeal of S. Vaznelis, attached hereto as **Exhibit D**. Nothing in Mr. Vaznelis' care or the condition of his health warrants a reduction or elimination of his 24/7 skilled nursing care. Mr. Vaznelis had ALS and was ventilator-dependent when HCSC approved 24/7 in-home skilled nursing care for Mr. Vaznelis in October 2015 (and continued to approve it over the next two plus years). Mr. Vaznelis still suffers from ALS and is still ventilator-dependent. *See* Exhibits A and B. The facts have not changed, and HCSC does not claim that they have. HCSC understood in October 2015, when it deemed that 24/7 skilled nursing was medically necessary that because no cure has been developed for ALS, Mr. Vaznelis' condition, unfortunately, will not likely get better.

Suddenly, however, HCSC has determined that Mr. Vaznelis' care is only "custodial" and not covered under the Plan. HCSC has not offered any evidence that anything has changed in Mr. Vaznelis medical condition or to indicate that his medical needs are any less severe than before. HCSC is redefining his care in order to eliminate coverage. HCSC's decision to reduce and ultimately terminate his 24/7 in-home skilled nursing care was arbitrary and capricious. *See Hewitt v. U.S. Office of Personnel Management*, 390 F. Supp.2d 685, 688 (N.D. Ill. 2005) (BCBS' conclusion that health care needs of plan beneficiary dependent on mechanical respirator

had become "custodial" in nature and thus skilled nursing would be reduced was an abuse of discretion where no evidence that anything in beneficiary's condition had changed).

Second, HCSC has offered no explanation or evidence to counter the conclusions of Mr. Vaznelis' treating physician, his nurse, and an External Review that his health care needs must be provided by skilled nursing. *See* Exhibits A and B. *See also* 2017 letter from Dr. J. Bartizal and Dr. T. Pawlowski, attached hereto as **Exhibit E**. And, indeed Illinois has indicated its intent to classify respiratory care as a skilled nursing service. As pointed out in the December 2017 independent External Review, the Illinois Administrative Code, which provides administrative rules for state agencies, prohibits a home service worker from providing respiratory care, including tracheal suctioning, adjusting oxygen flow, and turning off or changing tanks, all services which Mr. Vaznelis requires. *See* December 11, 2017 External Review, attached hereto as **Exhibit F**. *See also* Exhibit B. Title 77, Section 245.40 of the Illinois Administrative Code provides as follows:

> A home services worker shall not provide respiratory care. Respiratory care is skilled and includes postural drainage; cupping; adjusting oxygen flow within established parameters; nasal, endotracheal and tracheal suctioning; and turning off or changing tanks. However, home services workers may temporarily remove and replace a cannula or mask from the client's face for the purposes of shaving or washing a client's face and may provide oral suctioning.

77 Ill. Adm. Code 245.40(c)(4)(O). Plaintiff is therefore likely to prevail on his claim that HCSC's decision to reduce and ultimately terminate his 24/7 skilled nursing care was arbitrary and capricious.

### III.  The Balance of Harm And Public Interest Support Entry of a Temporary Restraining Order.

The balance of harm and public interest support entry of a temporary restraining order requiring that HCSC maintain the status quo and continue to provide coverage for 24/7 in-home

skilled nursing care to Mr. Vaznelis pending a preliminary injunction hearing. The harm to Mr. Vaznelis if an injunction is not issued is significant and potentially, catastrophic. By contrast, the harm to HCSC if an injunction is granted is minimal. For HCSC, the harm consists of expending additional funds to continue 24/7 skilled nursing for Mr. Vaznelis. For Mr. Vaznelis, however, his health is at stake.

## CONCLUSION

For the reasons set forth above, Plaintiffs Sigitas Vaznelis respectfully requests that this Court enter a temporary restraining order requiring Defendant Health Care Service Corporation to maintain the same level of medical benefits—i.e., 24/7 in-home skilled care—to Plaintiff pending a preliminary injunction hearing in this action or until further order of the Court, and for such other relief as this Court deems proper.

Respectfully submitted,

**SIGITAS VAZNELIS**

By: /s/ *Maureen Browne Schoaf*
    Richard R. Winter
    Maureen B. Schoaf
    HOLLAND & KNIGHT LLP
    131 S. Dearborn St., 30th Fl.
    Chicago, IL 60603
    312-263-3600
    312-578-6666 (fax)
    richard.winter@hklaw.com
    maureen.schoaf@hklaw.com

    and

By: /s/ *Martina B. Sherman*

    Martina B. Sherman
    Mark D. DeBofsky
    DEBOFSKY, SHERMAN & CASCIARI
    P.C.
    200 W. Madison St., Suite 2670
    Chicago, IL 60606
    312-561-4040
    312-929-0309 (fax)
    msherman@debofsky.com
    mdebofsky@debofsky.com

# EXHIBIT A

## DECLARATION OF DR. CASEY KELLEY

Dr. Casey Kelley declares and verifies as follows:

1.       I am over 18 years of age and I have personal knowledge of the facts set forth in this Declaration. If called and sworn as a witness, I would testify competently to them.

2.       I am a licensed medical doctor in the State of Illinois.

3.       Sigitas Vaznelis has been my patient since approximately January 18, 2018.

4.       Mr. Vaznelis has amyotrophic lateral sclerosis (ALS) and chronic Lyme disease.

5.       He is on a ventilator 24 hours per day, and receives all his nutrition, hydration and medication through a percutaneous endoscopic gastrostomy (PEG) tube.

6.       Both the ventilator and PEG tube need constant assessment and monitoring by a skilled nurse; they cannot be managed by a lay person. The skilled interventions include: tracheal suctioning, cough assist respiratory treatments, medicated nebulizer treatments, repositioning, and delivery of manual breaths to prevent occluded airway, oxygen desaturation and bradycardia.

7.       Mr. Vaznelis cannot be left alone without a skilled nurse available to monitor his vital signs and assess his respiratory status. For instance, if Mr. Vaznelis experiences occlusion of an airway due to increased secretions, then he requires immediate intervention without which he may die.

8.       Mr. Vaznelis has a very limited capacity to communicate (he uses his eyes) and is unable to call for help when needed. If he became disconnected from the ventilator or experienced an occlusion, he would not be able to call for help and would be deprived of oxygen.

9.       Mr. Vaznelis is medically fragile. He is unable to perform any of his activities of daily living, and is completely dependent on someone for all of his care.

10.    Mr. Vaznelis requires skilled nursing care twenty-four (24) hours per day, seven (7) days per week (168 hours per week) to provide constant monitoring, supervision, and interventions to maintain him safely in the home setting. Without constant skilled nursing supervision, Mr.Vaznelis is at high risk for respiratory complications, preventable infections, and death.

11.    These skilled nursing services are medically necessary in order to improve and maintain the quality of Mr. Vaznelis' health and prevent complications of his current condition.

12.    The alternative to Mr. Vaznelis' in-home 24/7 skilled nursing care would be immediate admission to an acute hospital intensive care unit. A nursing home cannot meet Mr. Vaznelis' complex medical needs. In a nursing home or skilled nursing facility, the residents are left alone a room for a great deal of time and the level of attention and monitoring is not at a level which would address the medical needs of Mr. Vaznelis.

13.    Mr. Vaznelis recently started new medications to treat his chronic Lyme disease, which is likely a major component to the cause of his ALS. Mr. Vaznelis' transport nurse believes he is gaining strength and movement with this treatment. However, Mr. Vaznelis' medical condition has not improved enough since the start of this treatment to warrant a reduction of 24/7 in-home skilled nursing services.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Executed this __9th__ day of May, 2018.

                                           Dr. Casey Kelley, MD

Dr. Casey Kelley

# EXHIBIT B

# VERIFIED DECLARATION OF DAVID MILLER

David Miller declares and verifies as follows:

     1.    I am over 18 years of age and I have personal knowledge of the facts set forth in this declaration. If called and sworn as a witness, I would testify competently to them.

     2.    I am a registered nurse (RN) licensed in the State of Illinois and currently employed as the Director of Clinical Services by Independence Plus, Inc., an Illinois licensed CHAP accredited Home Nursing Agency. I have been employed with Independence Plus Inc. since ___2017___. Sigitas Vaznelis has been receiving skilled nursing services from Independence Plus Inc. since June 2014. I am familiar with the skilled nursing needs of Sigitas Vaznelis.

     3.    Mr. Vaznelis' current plan of medical care provides for home skilled nursing services signed by his physician, requiring medically necessary RN/LPN services at 168 hour per week. These nursing services are either provided by a registered nurse (RN) or a licensed practical nurse (LPN).

     4.    Mr. Vaznelis is medically fragile. He has been diagnosed with ALS and Lyme disease and is unable to perform any of his activities of daily living. He is on a ventilator 24 hours per day, and requires frequent, life-saving tracheal suctioning multiple times every hour to maintain a patent airway. Mr. Vaznelis requires a skilled nurse (RN or LPN) to constantly assess his respiratory status and be available to preform life-saving interventions at a moment's notice. The skilled interventions include tracheal suctioning, cough assist respiratory treatments, medicated nebulizer treatments, repositioning, and delivery of manual breath to prevent occluded airway, and oxygen desaturation.

     5.    Mr. Vaznelis' respiratory status is compromised and requires constant assessment and life-saving interventions to simply maintain his current status and keep his vital signs within normal limits. Mr. Vaznelis is at an increased risk of hypoxia, preventable decompensation, and even death if pulmonary hygiene is not provided in order to maintain patent airway and adequate ventilation and oxygenation.

     6.    He cannot be left alone without a skilled nurse available to monitor his vital signs and assess his respiratory status. If Sigitas Vaznelis experiences occlusion of an airway due to increased secretions or a mucous plug, then he requires immediate intervention without which he may die.

     7.    Mr. Vaznelis has a PEG tube and all of his nutrition, hydration and medications are administered via the PEG tube. The skilled nurse is needed to maintain aspiration precautions as to prevent Mr. Vaznelis from aspiration pneumonia. The skilled nurse also prepares and administers all of his medications at the appropriate times.

     8.    In addition, skilled nurses monitor Mr. Vaznelis' skin very closely, and perform repositioning multiple times a day to prevent bed sores.

9.      Sigitas Vaznelis is completely dependent on someone for all of his care.  A skilled level of nursing care, twenty-four (24) hours per day, seven (7) days per week (168 hours per week) is required for Sigitas Vaznelis.  These skilled nursing services are necessary in order to improve and maintain the quality of Sigitas Vaznelis' health, prevent complications of his current condition, and ultimately prevent de-compensation of his medically fragile state.  Without constant skilled nursing supervision, Sigitas Vaznelis is at high risk for respiratory complications, preventable infections, and death due to bradycardia and cardiac arrest.

10.     Sigitas Vaznelis has been receiving 24/7 skilled nursing care from approximately June 2014 through the present.  During the approximate 3.5 years that Mr. Vaznelis has been receiving 24/7 skilled nursing care, his physical and medical condition have not improved to warrant a reduction or elimination of skilled nursing care.

11.     The alternative to Sigitas Vaznelis' skilled nursing (RN/LPN) care at his residence is inpatient hospitalization in an intensive care unit at an acute care hospital due to his ventilator dependency.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Executed this _27_ day of April, 2018.


                                        _David L. Miller_ DNP, MSN, RN, CNL, CRRN
                                        David Miller

#56793357_v2

# EXHIBIT C

# DECLARATION OF RUTA VAZNELIS

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

1.     I am over 21 years of age and I have personal knowledge of the facts set forth in this declaration. If called and sworn as a witness, I would testify competently to them.

2.     I am the wife and guardian of Sigitas Vaznelis ("Sig"). Sig resides with me at our home, along with our son, who is autistic and non-verbal.

3.     I am not a registered nurse or a licensed practical nurse.

4.     Sig is a medically fragile person. Sig has been diagnosed with ALS. In the past few years, his health has declined. He is confined to a bed and has a mechanical ventilator and feeding tube. He is not ambulatory. Sig communicates with an eye gaze.

5.     Sig's current medical plan provides home skilled nursing services for 168 hours per week, as ordered by his physician.

6.     Sig is on a ventilator 24 hours per day.  His skilled nurses provide frequent tracheal suctioning and cough assistance.

7.     Sig has a PEG tube and all of his nutrition, hydration, and medications are administered through the PEG tube by the skilled nurses.

8.     I am not capable of providing the high level of skilled care which is necessary to take care of Sig. I have not been trained to provide the high level of skilled care which Sig receives.

9.     If Sig does not maintain a minimum of the same level of nursing and home health care services which he currently receives, then I will have to place Sig in a hospital to receive the services he requires.

Executed this 27th day of April, 2018.

_____
Ruta Vaznelis

# EXHIBIT D


BlueCross BlueShield
of Illinois

May 05, 2018

| | |
|---|---|
| **Subscriber:** | Sigitas Vaznelis |
| **Group/Sub. No.:** | P10618/000844388925 |
| **Claim No.:** | Pre-Service Benefit Determination |
| **Appeal ID No.:** | 529966399 |
| **Appeal Type:** | Provider |

Casey Kelley MD
2265 N Clybourn Ave
Chicago IL 60614

| | |
|---|---|
| Phone: | (800)541-2763 |
| Fax: | (918)551-2011 |
| Email: | SDOAppeals@bcbsil.com |

---

**Subject: Your appeal results**

Dear Casey Kelley MD:

We received your appeal on April 09, 2018, for the denial of the below treatment or service(s).

The appeal and the related medical records you gave us have been reviewed by a M.D. physician reviewer who specializes in Neurological Surgery. This doctor was not involved in the prior denial.

| Appeal Decision | After careful review of the information we have, the appeal request has been **denied**. |
|---|---|

| | | | |
|---|---|---|---|
| Service(s) | Reconsideration of private duty nursing services | | |
| Member | Sigitas Vaznelis | Provider | Casey Kelley, M.D. |
| Service Date(s) | Pre-Service | Facility | Independence Plus, Inc. |
| Initial Decision | Medical policy review determined that the service provided is not covered based on corporate medical policy criteria. | Initial Decision Code | 745 |
| Initial Decision Date | March 02, 2018 | Claim Amount | $0.00 |

You have 180 days from the initial decision date to file an appeal. If appeal is eligible for an Independent External Review (IER), you have 4 months from the date of this letter (with time allowed for mail delivery) to file an IER request.

This decision is based on:

**bcbsil.com**

Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company, an Independent Licensee of the Blue Cross and Blue Shield Association


BlueCross BlueShield
of Illinois

May 05, 2018

|  |  |
|---|---|
| **Subscriber:** | Sigitas Vaznelis |
| **Group/Sub. No.:** | P10618/000844388925 |
| **Claim No.:** | Pre-Service Benefit Determination |
| **Appeal ID No.:** | 529966399 |
| **Appeal Type:** | Provider |

Casey Kelley MD
2265 N Clybourn Ave
Chicago IL 60614

|  |  |
|---|---|
| Phone: | (800)541-2763 |
| Fax: | (918)551-2011 |
| Email: | SDOAppeals@bcbsil.com |

Summary:

The patient is a 59-year-old male (date of birth (DOB) June 27, 1958) with a history of progressively worsening amyotrophic lateral sclerosis (ALS). This is a review for home skilled nursing services, given his condition.

Decision:

The patient is a 59-year-old male with ALS. He is wheelchair-bound, fed by gastric tube (G-tube), is ventilator-dependent, and is only able to communicate by moving his eyes. He is incontinent of bladder and bowel. He requires tracheostomy care and percutaneous endoscopic gastrostomy (PEG) tube feedings, hydration, and medications. His medications include azithromycin, nystatin, tinidazole, fludrocortisone, MiraLAX, ranitidine, Claritin®, heparin, ursodiol, riluzole, Xanax, and nebulizer ipratropium-albuterol. He requires repositioning every two hours when in bed and every 20 minutes when in a wheelchair. He requires 24-hour assistance. He needs physical therapy (PT), occupational therapy (OT), and speech therapy.

Based on review of the medical information, the request for private duty nursing (84 hours per week from May 10, 2018 to July 01, 2018 and 168 hours per week from July 01, 2018 to March 01, 2019; diagnosis code G12.21 (ALS); procedure codes S9123 (nursing care, in the home; by registered nurse, per hour) and S9124 (nursing care, in the home; by licensed practical nurse, per hour)) is denied.

Private duty nursing is approved for 24 hours per day through May 09, 2018. Effective May 10, 2018, private duty nursing is approved for 84 hours per week, through July 01, 2018. Effective July 01, 2018, private duty nursing is approved for zero hours per week.

Rationale:

Based on review of the medical information, the clinical services are accurately reflected.

Services noted in the record include the following:

**bcbsil.com**
Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company, an Independent Licensee of the Blue Cross and Blue Shield Association



**BlueCross BlueShield**
**of Illinois**

May 05, 2018

| | |
|---|---|
| **Subscriber:** | Sigitas Vaznelis |
| **Group/Sub. No.:** | P10618/000844388925 |
| **Claim No.:** | Pre-Service Benefit Determination |
| **Appeal ID No.:** | 529966399 |
| **Appeal Type:** | Provider |

Casey Kelley MD
2265 N Clybourn Ave
Chicago IL 60614

| | |
|---|---|
| Phone: | (800)541-2763 |
| Fax: | (918)551-2011 |
| Email: | SDOAppeals@bcbsil.com |

Twenty-four hour tracheostomy care, medication administration of azithromyin, nystatin powder, heparin, ursodiol, xanax, riluzole, nebulizer, MiraLAX and ranitidine, turning every two hours when in bed and every 20 minutes when in wheelchair, managing his incontinence of bowel and bladder, physical therapy (PT), occupational therapy (OT), speech therapy, and ventilator care, which will likely include suctioning as needed.

No additional clinical services were noted to be provided.

The requested private duty nursing is not in benefit.

The services mentioned in this case are considered custodial in nature, as the patient has not and is not expected to show improvement. The services that the patient requires can be performed by nonprofessional personnel with equal safety and efficiency.

The requested services can all be safely and appropriately done by someone who is not trained as a Registered Nurse (RN) or a Licensed Practicing Nurse (LPN) as a skilled nurse, given the services are considered custodial in nature.

There are not any extenuating circumstances such that the requested service is medically necessary for this patient.

As stated above, the patient has not shown improvement in his condition and is not expected to show improvement. His care at this point is considered custodial, and can be safely and appropriately provided by a caregiver who is not trained as an RN or LPN. Therefore, the requested service is not supported as medically necessary.

The services the patient is receiving are not skilled nursing services in that they require the skill of an RN or LPN nurse.

The documented services that are necessary for the patient (see above) can be taught to someone with no specialized training. Such services can be safely and effectively provided by family or others who are not an RN or LPN for this patient with chronic ALS who is not expected to improve.

All of the requested services being provided are something that can be reasonably taught to someone who does not have specialized training or skill.

**bcbsil.com**

Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company, an Independent Licensee of the Blue Cross and Blue Shield Association



| | | |
|---|---|---|
| | **Subscriber:** | Sigitas Vaznelis |
| | **Group/Sub. No.:** | P10618/000844388925 |
| | **Claim No.:** | Pre-Service Benefit Determination |
| | **Appeal ID No.:** | 529966399 |
| Casey Kelley MD | **Appeal Type:** | Provider |
| 2265 N Clybourn Ave | | |
| Chicago IL 60614 | **Phone:** | (800)541-2763 |
| | **Fax:** | (918)551-2011 |
| | **Email:** | SDOAppeals@bcbsil.com |

As noted above, the services can be taught to someone with no specialized training. Such services can be safely and effectively provided by family or others who are not an RN or LPN for this patient with chronic ALS who is not expected to improve.

There is no medical necessity for the requested services, as the patient's services can be safely, appropriately, and efficiently provided without skilled nursing at home.

References:

1. Majmudar S, Wu J, Paganoni S. Muscle Nerve. Rehabilitation in amyotrophic lateral sclerosis: why it matters. Author manuscript; available in PMC 2015 Jul 1. Published in final edited form as: Muscle Nerve. 2014 Jul; 50(1): 413. Published online 2014 May 17. doi: 10.1002/mus.24202. PMCID: PMC4433000. NIHMSID: NIHMS688363. PMID: 24510737.

2. Toles M, Colón-Emeric C, Naylor MD, Barroso J, Anderson RA. Transitional care in skilled nursing facilities: a multiple case study. BMC Health Serv Res. 2016; 16: 186. Published online 2016 May 17. doi: 10.1186/s12913-016-1427-1. PMCID: PMC4869313. PMID: 27184902.

Custodial care, long term care, respite care, maintenance care and services that are not medically necessary are an exclusion of the policy per the Morris Engineering, Inc. benefit book, on pages 75 to 78, under the section titled "EXCLUSIONS—WHAT IS NOT COVERED", which states:

"Expenses for the following are not covered under your benefit program:

— Hospitalization, services and supplies which are not Medically Necessary.

No benefits will be provided for services which are not, in the reasonable judgment of Blue Cross and Blue Shield, Medically Necessary. Medically Necessary means that a specific medical, health care or Hospital service is required, in the reasonable medical judgment of Blue Cross and Blue Shield, for the treatment or management of a medical symptom or condition and that the service or care provided is the most efficient and economical service which can safely be provided.

Hospitalization is not Medically Necessary when, in the reasonable medical judgment of Blue Cross and Blue Shield, the medical services provided did not require an acute Hospital Inpatient

Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company, an Independent Licensee of the Blue Cross and Blue Shield Association



May 05, 2018

| | |
|---|---|
| **Subscriber:** | Sigitas Vaznelis |
| **Group/Sub. No.:** | P10618/000844388925 |
| **Claim No.:** | Pre-Service Benefit Determination |
| **Appeal ID No.:** | 529966399 |
| **Appeal Type:** | Provider |

Casey Kelley MD
2265 N Clybourn Ave
Chicago IL 60614

| | |
|---|---|
| Phone: | (800)541-2763 |
| Fax: | (918)551-2011 |
| Email: | SDOAppeals@bcbsil.com |

(overnight) setting, but could have been provided in a Physician's office, the Outpatient department of a Hospital or some other setting without adversely affecting the patient's condition.

Examples of hospitalization and other health care services and supplies that are not Medically Necessary include:

— Hospital admissions for or consisting primarily of observation and/or evaluation that could have been provided safely and adequately in some other setting, e.g., a Physician's office or Hospital Outpatient department
— Hospital admissions primarily for diagnostic studies (x-ray, laboratory and pathological services and machine diagnostic tests) which could have been provided safely and adequately in some other setting, e.g., Hospital Outpatient department or Physician's office.
— Continued Inpatient Hospital care, when the patient's medical symptoms and condition no longer require their continued stay in a Hospital.
— Hospitalization or admission to a Skilled Nursing Facility, nursing home or other facility for the primary purposes of providing Custodial Care Service, convalescent care, rest cures or domiciliary care to the patient.
— Hospitalization or admission to a Skilled Nursing Facility for the convenience of the patient or Physician or because care in the home is not available or is unsuitable.
— The use of skilled or private duty nurses to assist in daily living activities, routine supportive care or to provide services for the convenience of the patient and/or his family members.

These are just some examples, not an exhaustive list, of hospitalizations or other services and supplies that are not Medically Necessary.

Blue Cross and Blue Shield will make the decision whether hospitalization or other health care services or supplies were not Medically Necessary and therefore not eligible for payment under the terms of your Certificate. In most instances this decision is made by Blue Cross and Blue Shield AFTER YOU HAVE BEEN HOSPITALIZED OR HAVE RECEIVED OTHER HEALTH CARE SERVICES OR SUPPLIES AND AFTER A CLAIM FOR PAYMENT HAS BEEN SUBMITTED.

The fact that your Physician may prescribe, order, recommend, approve or view hospitalization or other health care services and supplies as Medically Necessary does not make the hospitalization, services or supplies Medically Necessary and does not mean that Blue Cross and Blue Shield will pay the cost of the hospitalization, services or supplies.

Page 5 of 7

**bcbsil.com**

Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company, an Independent Licensee of the Blue Cross and Blue Shield Association



May 05, 2018

| | **Subscriber:** | Sigitas Vaznelis |
| | **Group/Sub. No.:** | P10618/000844388925 |
| | **Claim No.:** | Pre-Service Benefit Determination |
| | **Appeal ID No.:** | 529966399 |
| Casey Kelley MD | **Appeal Type:** | Provider |
| 2265 N Clybourn Ave | | |
| Chicago IL 60614 | **Phone:** | (800)541-2763 |
| | **Fax:** | (918)551-2011 |
| | **Email:** | SDOAppeals@bcbsil.com |

— Custodial Care Service.
— Long Term Care Service.
— Respite Care Service, except as specifically mentioned under the Hospice Care Program.
— Maintenance Care."

Verbal notification was attempted for Casey Kelley, M.D. on May 05, 2018, at 9:45 a.m. Central time; however, there was no answer. Generic message was left.

Verbal notification was attempted for Chris Evans at Independence Plus, Inc. on May 05, 2018, at 9:47 a.m. Central time; however, the office was closed. Unable to leave a message.

Verbal notification was attempted for John Bartizal Jr., M.D. on May 05, 2018, at 9:49 a.m. Central time; however, the office was closed. Generic message was left.

Verbal notification was attempted for Sigitas Vaznelis on May 05, 2018, at 09:50 a.m. Central time; however, there was a busy signal. Unable to leave a message.

Your plan states the levels of appeals you may have. Based on your plan, you had one internal appeal available to you. This was your final internal appeal.

Because the denial was based on a medical judgment, you may have the right to an Independent External Review (IER). This review is done at no cost to you. To request an IER, you must complete and return the enclosed form within four months of the date of this letter (with time allowed for mail delivery). The Internal Review Organization (IRO) will respond to your request and give you the details of their review process. Except where State or Federal law allows other options, the decision from an external review is final.

You may request a copy, free of charge, of the benefit term(s) or rule(s) we used to make our decision. If needed, you may also get a copy of all documents relevant to the appeal free of charge. This includes any new or added evidence that we didn't have at the time of our first decision. If you'd like a description of the medical code(s), you may ask for that as well.

If you have questions or to request copies, please contact Customer Service at the number above.

Sincerely,

**bcbsil.com**

Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company, an Independent Licensee of the Blue Cross and Blue Shield Association


**BlueCross BlueShield of Illinois**

May 05, 2018

|  |  |
| --- | --- |
| **Subscriber:** | Sigitas Vaznelis |
| **Group/Sub. No.:** | P10618/000844388925 |
| **Claim No.:** | Pre-Service Benefit Determination |
| **Appeal ID No.:** | 529966399 |
| **Appeal Type:** | Provider |

Casey Kelley MD
2265 N Clybourn Ave
Chicago IL 60614

|  |  |
| --- | --- |
| Phone: | (800)541-2763 |
| Fax: | (918)551-2011 |
| Email: | SDOAppeals@bcbsil.com |

Natlie B
Appeals Specialist II
Appeals Department

Cc: Martina Sherman
    Sigitas P Vaznelis
    Independence Plus Inc
    John Bartizal Jr MD

Attachment:
Triage IL Addenda- Fully Insured Group BOTH GF and UGF
Triage IL FI or Retail or ASO UGF following State process clinical review DOI forms- External
Review Request Form, Authorized Representative Form, Expedited Form, Experimental Form

**bcbsil.com**

Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company, an Independent Licensee of the Blue Cross and Blue Shield Association

# EXHIBIT E


1100 W. Cermak Road
Suite C-500
Chciago, IL 60608

Phone: 312-243-2223
Fax: 312-243-2227
Toll free: 1866-MD-AT-HOME

Date: 12/04/2017
RE: Sigitas Vaznelis, DOB: 06/27/1958, PT ID #15535

To whom it may concern,

This is a request for continuation of 24/7 (168 hours per wekk) Skilled hourly (RN/LPN) Home nursing services.

Sigitas Vazenlis is an adult male with a diagnosis of a progressive neuromuscular disease (Bulbar Palsy/ALS) and is concurrently under treatment for progressively debilitating Lyme disease. In June 2014, he suffered chronic respiratory failure and is ventilator dependent, status post tracheostomy. He suffers from dysphagia and is s/p PEG placement for nutritional needs and hydration.

Sigitas needs a nurse available for more than 18 hours per day given his total dependency on nursing for all of his care. The recommended time of care by nursing is 24 hours per day as patient doesn't have a caregiver and has not other means of being stable.

Upon discharge to home in August 2014, he was able to tolerate weaning up to 12 hours per day with nocturnal ventilation, however, due to progression of his NMD, he has significantly declined and is now on ventilator 24 hours a day to prevent infection, respiratory distress, hypoxia, decompensation, and ultimately death.

Skilled nursing provides aggressive pulmonary hygiene to maintain patent airway, adequate ventilation and oxygen. He receives treatments with an in-exsufflator minimally four times daily, however, at times every 15 minutes due to increased secretions to maintain a patent airway and prevent pneumonia and respiratory complications.

Ventilator settings: He is currently utilizing the Trilogy 100 24 hours per day with the following settings: Mode assist control, breath rate 10, TV 500ml, PEEP 5, Inspiratory time 0.8 s, low minute volume 1.0, sensitivity 3, Flow trigger.

He no longer tolerates the Passy Muir Valve due to muscle weakness. Increased work for breathing using accessory muscles, excessive oral secretions related to his inability to swallow, cough, or provide voluntary airway clearance. He is no longer able to direct care verbally and uses a clicker hooked to a monitor to communicate. Nurse to perform trachesotomy care daily and as needed, trach inner cannula is changed daily. Trach is changed in the home every 6-8 weeks as needed with 2 trained caregivers/skilled nurse present. He has increased secretions from his trach as well as orally and frequent suctioning is needed.

All nutrition, hydration, and medications are delivered via 20FR PEG tube.

Sigitas Vaznelis is no longer able to ambulate safely and requires full assistance for all transfers. he is at high risk for skin breakdown related to immobility.

Sigitas requires skilled assessments and necessary life-saving interventions to stay in the home setting which is the most cost effective and appropriate placement for this patient.

Sigitas requires skilled assessments and necessary life-saving interventions to saty in the home setting which is the most cost effective and appropriate placement for this patient.

Thank you for consideration of 24 hour nursing care for my patient.

Sincerely,

Electronically Signed by: THOMAS PAWLOWSKI, MD

---



1100 W. Cermak Road
Suit C-116
Chicago, IL 60608

Phone: 312-243-2223
Fax:: 312-243-2227

Patient Name: Sigitas Vaznelis
Date of Birth: 06/27/1958

Date 08/25/2017

To whom it may concern:

This is a request for continuation of 24/7 (168 hours per week) Skilled Hourly (RN/LPN) Home nursing services.

Sigitas Vaznelis is an adult male with a diagnosis of a progressive neuromuscular disease (Bulbar Palsy/ALS) and I concurrently under treatment for progressively debilitating Lyme disease. In June 2014 he suffered chronic respiratory failure in June 2014 and is ventilator dependent and status post-tracheostomy. He suffers from dysphagia and is status post PEG placement for nutritional needs and hydration.

Upon discharge to home in August 2014, he was able to tolerate weaning up to 12 hours per day with nocturnal ventilation however, due to progression of his NMD, he has significantly declined and is now on ventilator 24 hours a day to prevent infection, respiratory distress, hypoxia, decompensation, and ultimately death.

Skilled nursing provides aggressive pulmonary hygiene to maintain patent airway, adequate ventilation and oxygen. He receives treatments with an in-exsufflator minimally four times daily, however, sometimes every 15 minutes due to increased secretions, to, maintain a patent airway and prevent pneumonia and respiratory complications.

Ventilator settings: He is currently utilizing the Trilogy 100 24 hours per day with the following settings. Mode assist control, Breath rate 10, Tidal Volume 500ml, PEEP 5, Inspiratory Time 0.8 seconds, low minute volume 1.0, sensitivity 3, Flow Trigger

He no longer tolerates the Passy Muir Valve due to muscle weakness. Increased work of breathing using accessory muscles, excesive oral secreations related to his inability to swallow, cough, or provide

voluntary airway clearance. He is no longer able to direct care verbally and uses a clicker hooked to a monitor to communicate. Nurse to perform tracheostomy care daily and as needed, trach inner cannul is changed daily. Trach is changed in the home every 6 to 8 weeks as needed with 2 trained caregivers/skilled nurse present. He has increased secretions from his trach as well as orally and frequent suctioning is needed.

All nutrition, hydration, and medications are delivered via 20 FR. PEG tube.

Sigitas Vaznelis is no longer able to ambulate safely and requires full assistance for all transfers. He is at high risk for skin breakdown related to immobility.

Sigitas requires skilled assessments and necessary life-saving interventions to stay in the home setting which is the most cost effective and appropriate placement for this patient.

Thank you for consideration of 24 hour nursing care for my patient.

Sincerely,

John Bartizal MD                    08/25/2017
NPI: 1376638700

# EXHIBIT F



# Illinois Department of Insurance

December 11, 2017

Chris Evans
Independence Plus, Inc
720 Enterprise Dr
Oak Brook IL 60523

Sigitas Vaznelis
13507 South Red Coat Dr.
Lemont IL 60439

Re:    External Review Number: IL17-12792
       Patient Name: Sigitas Vaznelis
       Health Carrier:  Blue Cross Blue Shield of Illinois (Health Care Service Corporation)
       Service or Treatment:  Other Services\Skilled Nursing Services
       Dates of Service:
       Independent Review Organization:  ProPeer Resources, LLC

Dear Mr. Evans and Mr. Vaznelis:

Enclosed is a copy of the reply the Department of Insurance has received from ProPeer Resources, LLC regarding your external review request.

ProPeer Resources, LLC has overturned the adverse determination.  Blue Cross Blue Shield of Illinois (Health Care Service Corporation) should be providing coverage or payment for the services in question.

If you have any questions regarding this matter, please contact **Kate Fabion at (877)850-4740.**

Sincerely,

Kate Fabion
Insurance Analyst
Health Products Complaints
(217)557-8495 (Fax)
doi.externalreview@illinois.gov

cc:    Blue Cross Blue Shield of Illinois (Health Care Service Corporation)

 po box 1148
bountiful, ut 84011
P 800.292.3051
801.292.3299


NAIRO

## Notice of Final External Review Decision

Date of Notice:         12/11/2017

Date of Decision:       12/11/2017

Date Conducted:         12/11/2017

Time Period Review Conducted: 12/08/2017-12/11/2017

| | | |
|---|---|---|
| Name of TPA: | Health Care Service Corp. | Telephone: 406-437-6446 |
| Address: | Karen Marlar<br>300 E. Randolph<br>Chicago, IL 60601 | |
| Patient Name: | Sigitas Vaznelis<br>13507 S Redcoat Dr<br>Lemont, IL 60439-8160 | Telephone: 630-257-0137 |
| Patient's Rep: | Independence Plus<br>Attn: Chris Evans<br>720 Enterprise Dr<br>Oak Brook, IL 60523 | Telephone: 630-463-4415<br>Fax: 630-954-0093 |

### This document contains important information that you should retain for your records.

Historical Case Details
*(As provided by Health Plan)*

| | |
|---|---|
| Patient Name:  Sigitas Vaznelis | ID Number:      IL17-12792 |
| Insured Name: Sigitas Vaznelis | Date of Service: Predetermination |
| Claim #:       9292465 | Provider:    John Bartizal, Jr. MD |
| Date of Case Assignment: 12/08/2017 | Type of Appeal: Standard State External |

## DESCRIPTION OF THE SERVICE OR SERVICES IN DISPUTE:
Additional 6 hours of Skilled Home Nursing Services per day 12/14/2017 – 03/01/2018

## FINAL EXTERNAL REVIEW DECISION:
This document serves as notice of a final external review decision.

Upon a Full and Fair Independent Review, ProPeer finds the previous denial [adverse determination(s)] is:

 o Overturned (Disagree with original health plan denial decision)

**CLINICAL SUMMARY:**
The patient is a 59-year-old male currently diagnosed with neuromuscular disease (bulbar palsy/amyotrophic lateral sclerosis [ALS]), Lyme disease, gout, anxiety, aspiration pneumonia and anemia. The patient is ventilator dependent.

The physician letter of 12/04/2017, indicated that the patient no longer tolerated a Passy-Muir valve due to muscle weakness. The patient had increased work for breathing using accessory muscles, excessive oral secretions related to his inability to swallow, cough or provide voluntary airway clearance. The patient ventilator was a Trilogy 100 utilized 24 hours per day with mode assist control, breathing rate of 10, tidal volume (TV) of 500 mL, Positive end-expiratory pressure (PEEP) of 5, and inspiratory time of 0.8 seconds, low minute volume 1.0, sensitivity 3 and a flow trigger. The patient was no longer able to direct his care verbally and used a clicker to communicate. The nurses performed tracheostomy care daily and as needed. The tracheostomy inner cannula was changed daily. The trach was changed in the home every 6-8 weeks as needed with 2 trained caregiver/skilled nurse present. The patient had increased secretions from his tracheostomy as well as orally, and frequent suctioning was needed. All nutrition, hydration and medications were delivered via a 20 French PEG tube. The patient was not able to ambulate safely and required full assistance for all transfers. The patient was at high risk for skin breakdown related to immobility. The physician opined that the patient needed skilled assessment and necessary life-saving interventions to stay in the home setting, which was noted to be the most cost effective and appropriate placement for the patient. The patient had been approved for 18 hours of home skilled nursing care per day. The remaining 6 hours per day are under review.

**REASON FOR DETERMINATION/RATIONALE:**
Per UpToDate, "Respiratory muscle weakness is common among patients who have neuromuscular disease. Some of the diseases respond to specific therapies (eg, Guillain-Barré syndrome, myasthenia gravis, polymyositis), while others are incompletely treated (eg, amyotrophic lateral sclerosis)…Invasive mechanical ventilation is indicated for patients who require continuous mechanical ventilation for longer than a few days, or those who have contraindications to non-invasive ventilation (NIV)". The Centers for Medicare and Medicaid Services (CMS) indicate that home health services are supported for patients who are considered confined to home such as patients who have an illness or injury that requires the aid of supportive devices such as crutches, canes, wheelchairs, and walkers; the use of special transportation; or the assistance of another person in order to leave their place of residence or the patient has an inability to leave home as doing so requires a considerable and taxing effort. Such patients include those with late stage or complex neurodegenerative conditions. Title 77, Section 245.40 of the Illinois Administrative Code states that "a home service worker shall not provide respiratory care. Respiratory care is skilled and includes postural drainage; cupping; adjusting oxygen flow with established parameters; nasal, endotracheal and tracheal suctioning; and turning off or changing tanks".

The patient is 59 years old and has a progressive neuromuscular disease ALS. Initially, the patient had been treated with a Passy-Muir valve. The patient is no longer able to utilize a Passy-Muir valve due to muscle weakness and is now ventilator dependent 24 hours per day. It is imprudent to decrease the quantity of hours the patient has ventilator supervision and nursing care as this reduction may result in the development of pneumonia, or an unnecessary admission into the hospital and possibly even an acceleration of death. The patient has a complex neurodegenerative condition for which skilled care is appropriate per CMS. The use of RNs (registered nurse) and LPNs (licensed practical nurse) for monitoring a ventilator is supported per the Illinois Administrative Code and this is the standard of care as RNs and LPNs are trained to monitor for sudden changes in condition and are able to adjust the ventilator when necessary.

The prior determination has been overturned.

**INFORMATION PROVIDED FOR REVIEW:**
1. BlueEdge HSA 80/60 Embedded Deductible Plan, BlueCross BlueShield of Illinois.
2. Joint Committee on Administrative Rules, Illinois Administrative Code, Section 245.20.
3. Joint Committee on Administrative Rules, Illinois Administrative Code, Section 245.40.
4. Undated, Appeal Request and Procedures Form, Chris Evans.
5. Undated, Affidavit of Tamara M. Muller, Tamara M. Muller, Leslie J. Weiss.
6. 07/29/2017 – 08/12/2017, Patient Care Records, Independence Plus, healthcare at home.
7. 08/24/2017, Clinical Summary, Bronwyn Case, RN, BSN.
8. 08/25/2017, Letter, John Bartizal, MD.
9. 09/12/2017, Letter of Determination, BlueCross BlueShield of Illinois.
10. 10/02/2017, Supervisory Clinical Assessment. Independence Plus. healthcare at home.
11. 08/10/2017 – 10/08/2017, Home Health Care Certification and Plan of Care, Independence Plus, Inc.
12. 10/13/2017, Appointment of Authorized Representative and Consent for Release of Medical Records, R. Vaznelis, P.O.A.
13. 10/17/2017, Internal Appel, Chris Evans.
14. 11/16/2017, Appeal Letter, Holland & Knight.
15. 11/20/2017, Letter, BlueCross BlueShield of Illinois.
16. 11/22/2017, Letter, BlueCross BlueShield of Illinois.
17. 12/01/2017, Letter, Barbara Brotine MA, MD, FACP.
18. 12/04/2017, Peer Review Report, MES Peer Review Services.
19. 12/04/2017, Letter, Thomas Pawlowski, MD.
20. 12/06/2017, Physician Certification. Request for Expedited Review, Thomas Pawlowski, MD.
21. 12/06/2017, Denial Letter, BlueCross BlueShield of Illinois.
22. 12/08/2017, Independent External Review, BlueCross BlueShield of Illinois.
23. 12/08/2017, Letter, Illinois Department of Insurance.
24. 12/08/2017, Expedited External Review Eligibility Request, Illinois Department of Insurance.

**REFERENCES:**

1. Centers for Medicare and Medicaid Services. (2015). Chapter 7 - Home Health Services. Medicare Benefit Policy Manual. (Rev. 208, 05/11/2015). Retrieved from https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/bp102c07.pdf

2. MCG. Home Care. 21st ed. (2017). Private Duty Nursing; ORG: PDN-2001 (HC).

3. Joint Committee on Administrative Rules, Illinois Administrative Code, Section 245.20.

4. Joint Committee on Administrative Rules, Illinois Administrative Code, Section 245.40.

5. Epstein, S. K. (2017) Respiratory muscle weakness due to neuromuscular disease: Management. In. Parsons, P. E., Shefner, J. M., Morrison, R. S. (Eds.) UpToDate, Waltham, MA. Retrieved from https://www.uptodate.com/contents/respiratory-muscle-weakness-due-to-neuromuscular-disease-management

**Attestations:**
ProPeer's clinical reviewer states the following:

Credentials, Knowledge & Experience
I do possess the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review.

I also possess the relevant experience and /or knowledge to render an opinion or determination for this case.

I also have had a minimum of 5 years, Full-Time Equivalent, providing direct patient care.

I possess the relevant experience, WITHIN THE PAST 3 YEARS necessary to provide a full and fair review of this case.

Financial Incentives
I attest I am NOT to receive any financial incentive that is dependent in any way on my recommendation to ProPeer or the referring entity, or the outcome of this case.

Independence
I attest that I have had no involvement with this case (episode of care) prior to the referring entity's initial referral of this case to ProPeer.

Conflict of Interest
I, the clinical reviewer, do hereby attest that I do not have a conflict of interest in this case. For the purposes of this peer review, Conflict of Interest is defined as:
I am free of any material professional, familial or financial conflict of interest with any of the following:
   ▪ The referring entity (ProPeer's client);

- The health carrier;
- Any officer, director or management employee of the health carrier;
- Any group health plan administrator, plan fiduciary or plan employee;
- The covered person/injured worker or their authorized representative;
- The attending provider or any other health care provider previously involved in this case, the provider's medical group or independent practice association recommending the health care service or treatment that is the subject of his peer review;
- The facility at which the recommended health care service or treatment would be provided; **or**
- The developer or manufacturer of the principal drug, device, procedure, or the therapy being recommended for the covered person.

## A DESCRIPTION OF THE QUALIFICATIONS FOR EACH PHYSICIAN OR HEALTH CARE PROVIDER WHO REVIEWED THE DECISION:

I attest that I hold appropriate licensure/credentials that typically manages the medical condition, procedure, treatment or issues under review and maintain current knowledge to render a determination. I received my medical degree from St. Matthews University School of Medicine. I completed my Internal Medicine Internship and Internal Medicine Residency at Texas Health Presbyterian Hospital and my Nephrology Fellowship at Scott & White Memorial Hospital. I hold active and unrestricted licenses in Texas and Oklahoma. I have experience producing Peer Reviews supported by evidence-based medicine and have experience with worker's compensation claims. I am Board Certified in Internal Medicine and Nephrology.

The opinions rendered herein are based solely upon review of the written records and information submitted by the client for review and evaluation. No verbal information whatsoever is obtained or used during the review and evaluation process. PROPEER Resources cannot be responsible for the accuracy of the information submitted for review.

**What happens now?**
If we have *overturned* the denial, your plan or health insurance issuer will now provide service or payment.

If we have *upheld* the denial, there is no further review available under the appeals process.

This determination is binding except to the extent other remedies may be available to the plan or covered person under applicable federal or State law.

**What if I need help understanding this decision?**
You may contact ProPeer Resources at 1-800-292-3051 if you need assistance understanding this notice.

**Other resources to help you:**
For questions about your appeal rights, this notice, or for assistance, you can contact the Employee Benefits Security Administration at 1-866-444-EBSA (3272). Additionally, a consumer assistance program may be able to assist you in your state.

**HIPAA Confidentiality Notice -Protected Health Information**

*This document and any attachments are intended solely for the use of the person/entity to which it is addressed and may contain Protected Health Information (PHI). PHI is individually identifiable health information related to a person's past, present or future physical or mental health; a provision of health care to that person; or the past, present, or future payment for that person's health care. To the extent the information in this document contains PHI, you are obligated to maintain PHI in a secure and confidential manner in accordance with applicable law. If you have received this document in error, please notify ProPeer immediately by telephone, destroy this document and delete any copies held in your possession. Unauthorized use and/or re-disclosure, or failure to maintain confidentiality of PHI may subject you to penalties under applicable state and federal laws.*